<div style="margin-left:margin">TRESPASS.

*Case* 126.

*July* 31.

Case stated.</div>

# Naylor *vs* Hays.

### ERROR TO THE BARREN CIRCUIT.

### *Master and slave.    Estoppal.*

JUDGE SIMPSON delivered the opinion of the Court.

THE plaintiff in error having in his hands as Constable, an execution against Dick Hays, a man of color, and having sold, in satisfaction thereof, various articles of personal property, an action of trespass was brought against

him by the defendant in error, for the property seized by him and applied to the payment of the execution.

It appeared upon the trial, that the defendant in the execution had been the slave of the plaintiff, David Hays, Sen. That many years previously, the slave and his master entered into a written agreement, and deposited it with the witness, stipulating for the freedom of the slave, upon the payment of a certain sum, the amount of which was not recollected by the witness. That the writing was some time thereafter surrendered to the parties, and nothing had been known of it since. It was also proved that for eight or ten years before the trial, Dick had been going at large, trading for himself, and in every respect acting as a free man, the plaintiff not exercising any control over him, nor doing or saying any thing which indicated that he was still his slave ; but on the contrary, declaring that he had nothing to do with him, and using language calculated to create the impression that he was free.

We are clearly of the opinion, that upon this evidence, third persons, who were strangers to the relations actually subsisting between the plaintiff and Dick, had a right to rely upon the conduct of the plaintiff as creating a presumption of Dick's freedom, and as estopping him from denying the fact, so far as they were concerned, unless he made it appear that they knew at the time they dealt with Dick as a free man, he was in reality a slave.

A master permitted his slave to go at large, trade and act as a free man, declaring that he had nothing to do with him. Held that the master could not, as to strangers who are not apprized of the fact that he was a slave, claim the property made and possessed by the slave, or maintain an action against a public officer for levying on the property of the slave.

If he were still a slave, and had never been emancipated, the conduct of the master was a palpable violation of the law, and to permit him under the circumstances, to hold others to an accountability as if Dick were a slave, whilst he was treating him as a free man himself, would enable him to take advantage of his own wrong, and thereby perpetrate a gross fraud upon the community.

On the other hand, if an individual should deal with a slave, knowing him to be a slave, he should not be permitted to vindicate the act, or shield himself from the consequences of its illegality, by relying upon the illegal conduct of the master. Although even in such a case, in a contest with the master for property sold by the slave, the conduct of the master might be relied upon by the

purchaser, as evidence of agency in the slave, and an au‑
thority to make the sale.

Under the act of 1800, slaves may be emancipated by
an instrument of writing, without any particular formali‑
ty, and the act of recording is not necessary to the validi‑
ty of the emancipation; (2 *J. J. Marshall,* 230.)   The
master, therefore, not being required to do any act in
emancipating a slave, which will operate as a public no‑
tice of what he has done, and having it in his power to
emancipate by the secret execution of an instrument of
writing, which by collusion between him and the person
whose freedom it secures, may be brought forward or
withheld at pleasure, should not be permitted in opposi‑
tion to the fair presumption arising from his own conduct,
upon such a state of fact as this case presents, to prove,
so far as the rights of innocent parties are concerned,
that the relation of master and slave still exists.

The consequence of this doctrine is, that upon the evi‑
dence exhibited, the trial in the Court below should have
been conducted and governed by the same rules of law
that would have been applicable to the case, if the de‑
fendant in the execution had been a free man; the plain‑
tiff's right of recovery not being made to depend upon
the question of slavery, but upon his right to the prop‑
erty, and the liability of the defendant under the circum‑
stances proved, independant of that fact.

The instructions of the Court below to the jury being
inconsistent with the principles contained in this opinion,
were erroneous.

. Wherefore, the judgment is reversed and cause remand‑
ed, that a new trial may be granted, and for further pro‑
ceedings in conformity with this opinion.

*Underwood* for plaintiff; *Craddock* for defendant.