LOUISA LEWIS *et al.*, Respondents, *v.* HENRY N. HART, ADMINISTRATOR, &c., Appellant.

*Slaves—Manumission.*—A deed or act of manumission of a slave may be presumed from such acts of the master as afford a sufficient ground for the presumption.

*Appeal from St. Louis Circuit Court.*

*Hart, Shreve* and *Boyce*, for appellant.

I. The main proposition in this case is, whether a free person of color can own a slave. The appellant insists that free persons of color are guaranteed the right to reside in this State. (R. C. 1095, § 8.) That license is the only prerequisite.

II. The constitution of Missouri guarantees to every settler in this State the right to bring slaves into the State from any other slave State as long as slavery exists here. (R. C. 1855, Art. III., § 26, p. 69; Charlotte v. Chouteau, 11 Mo. 193.)

III. The right to acquire, own and possess property is an inherent right under our form of government, without regard to color—slaves as other property. (Davis v. Evans, 18 Mo. 252.)

IV. The statute provides the mode of emancipation in this State. (R. C. 1478, § 1.) Judge Scott has decided that emancipation may be presumed, as any other fact. (Durham v. Durham, 26 Mo. 510.) But, in this case at bar no presumption can arise, as the evidence shows conclusively that the respondent never was manumitted.

V. If any fact was shown from which manumission might be inferred, then such inference can be drawn, as if the mother of respondent had devised her (respondent) property. Such a devise would not be good in Missouri. A bond may be presumed when required, after great lapse of time, as ownership from adverse uninterrupted possession. No such presumption can arise against a prohibitory statute.

VI. The relation of parent and child does not enter into the consideration of this subject. If the mother of the respondent had been in debt, the respondent could have been taken in execution for its payment.

VII. If the sale of respondent to her mother was void, then respondent is the slave of her vendor. The statute having fixed the mode of emancipation, and that mode not having been carried out actually, and no proof of presumptive

liberation appearing, but the contrary, how then does she claim her freedom ? If it is claimed because of the merger of the relation of master and servant into that of parent and child, then every master (*pari passu*) who is also the father of a negro child has thereby lost his ownership.

*A. J. P. Garesché* and *Sharp & Broadhead,* for respondents.

The appellant presents to this court, in support of his appeal, but one question, which, plainly stated, is, that a negro once having been a slave, can only establish his emancipation by showing " a last will or other instrument in writing, under seal, and proved or acknowledged in court," &c.

I. Freedom or manumission may, and should, be inferred from circumstances, from the acts and declarations of the parties, and it is not necessary that any deed or written act of emancipation be proven.

To maintain the first proposition, see 6 Gill & John. (Md.), case of Burke v. negro Joe, p. 136. In Missouri, a deed or written instrument was necessary to manumit ; but it was held that it should be presumed from circumstances. (Naylor v. Hays, 7 B. Mon. 478.) Master permits his slave to go at large and act as free, he is estopped from denying it. (Henderson v. Jason, 9 Gill, 484.) Establishing that deed of manumission must be inferred from the acts of the former owner, and permitting slave to act as free, &c. (Durham v. Durham, 26 Mo. 507.) If a devise is made to a slave by the owner, freedom will be presumed from this act, and the negro is entitled to freedom by implication. (Legrand v. Darnall, 2 Pet. 670 ; Hall v. Mullen, 5 Har. & John. 190.)

II. Respondent is claimed to have been a slave of her mother, (a negro,) and one negro cannot hold another in slavery in this State.

To maintain the second proposition, see 14 Georgia Reports, 197—the celebrated case of Bryan v. Walton—the point before us being treated of at page 197 and following. Also, the just and sound dictum of the late Chief Justice

Scott of this court, in case of Davis v. Hays, 18 Mo. 249, and 3 Harr. 270.

III. The mother could not hold her own child in slavery. The relation of master and slave was merged in the higher and holier relation of parent and child.

To support the third point, see the case last mentioned, in 3 Harr. 270, in which the court decides that "a father cannot hold his own children in slavery, nor sell them as slaves, though he may have received them from the condition of slavery; Tindal v. Hudson, 2 Harr. 441, in which the Superior Court decides, not only that a free negro cannot hold a negro as a slave, but also that a parent cannot hold its own child in slavery; the very nature of the relation of master and slave forbids it; "humanity forbids it." The natural rights and obligations of a father or parent are paramount to the acquired rights of master. The moment the parent acquires the child rescues it from bondage; the rights of master and of parent become blended in the same person; the lesser right of master yields to, and is merged in, the higher, holier and more sacred right of parent, and the child is free.

BAY, Judge, delivered the opinion of the court.

At the September term, 1859, of the St. Louis Circuit Court, plaintiff filed her petition (having previously obtained the consent of the court thereto) alleging that defendant, as administrator of the estate of Lizzie, alias Elizabeth Dickson, deceased, claimed her and her son George, a minor, as slaves of said estate. The petitioner further alleges that about seventeen years previous to the filing of her petition she was purchased by her mother, the said Lizzie, a free negro, on the condition that she should be emancipated, and that she was emancipated by said Lizzie at the time of the purchase aforesaid; that during the time intervening between said purchase and the death of said Lizzie, a period of about seventeen years, she and her child George, who was born after her emancipation as aforesaid, were considered and regarded

as free persons, and so conducted themselves with the knowledge and consent of said Lizzie. The petitioner prays that her right and that of her child to freedom may be established by the judgment of the court.

The defendant in his answer denies having any knowledge or information sufficient to form a belief as to all the material allegations in the petition, and charges that said petitioner is not entitled to her freedom, nor is her son George, and that both are slaves belonging to the estate of Elizabeth Dickson.

At the April term, 1860, a trial was had, and a verdict rendered for the petitioner, upon which the court rendered the usual judgment. A motion for a new trial being overruled, the defendant appeals to this court.

The only questions for our consideration grow out of the instructions given and refused; and to determine these properly, it is important to keep in view the testimony given upon the trial, which was substantially as follows:

George W. Manning, a witness in behalf of plaintiff, testified that he had known plaintiff for twelve years, during which time she resided in the city of St. Louis. He also knew her mother, Lizzie Dickson, who died last summer. Louisa, for many years, lived in an alley between Carr and Biddle, and Twelfth and Thirteenth streets, and kept house for herself. Her mother never lived with her to his knowledge. She took in washing, and managed her own affairs. Her son George, who is nearly white, lived with her.

John How, a witness, also introduced by the plaintiff, stated that he had known plaintiff in St. Louis for about ten years. She had a husband who formerly belonged to witness, but had been freed by him. Her husband lived part of the time in Chicago, and he and his wife kept up a correspondence; the letters passed through the hands of witness. Plaintiff applied to witness, who was mayor of St. Louis, for a permit to live in St. Louis as a free woman. Witness granted it, but first required and obtained from her mother Lizzie, a writing for that purpose. Witness also gave her a pass to cross the ferry as a free person. The husband of plaintiff is

dead. Plaintiff took in washing for several persons; had money on deposit; knows of her having five hundred or six hundred dollars; knew of her having a deposit account in her own name at the Boatman's Savings Institution. Witness had made deposits for her, and all her transactions were in her own name.

Another witness testified that she had known plaintiff eight or nine years; knew her mother Lizzie about nineteen years. Lizzie died in July, 1859, and owned the house she died in. Plaintiff lived in another part of the city and supported herself and child; plaintiff went to Chicago eighteen months or two years ago, and returned to St. Louis after the death of her husband; plaintiff always passed as a free woman; heard Lizzie say, about three weeks before she died, that plaintiff and her son George were free at her death, and they should not serve anybody after she died.

Lucinda Miles testified that Lizzie told her that, at her death, her grandson George should have all of her property.

Martha Brown, another witness, testified that she had often heard Lizzie say that Louisa was as free as she was, and that she had not bought her to be a slave for any person; witness knew Lizzie well; lived in same house with her five years; she always spoke of plaintiff and her son George as being free, and that the property she had was George's; plaintiff and her mother visited each other, and her mother knew of her going to Chicago, and of her acting and living as a free person; heard Lizzie say that she bought Louisa to be free, and not to be the slave of any one.

George W. Manning being recalled, said he had many times heard Lizzie say that Louisa was free and could go where she pleased, and she intended to give her property to her child.

The defendant offered no evidence.

The court thereupon instructed the jury as follows:

" If the jury find from the evidence that Lizzie Dickson, the mother of the plaintiff Louisa and the grandmother of the boy George, was a free negro; that before the birth of

George she purchased Louisa for the purpose of securing her freedom; that she treated Louisa as her daughter, and as a free person; that she permitted her to live by herself, and to act as a free person; that she allowed her to go to Illinois to reside, and to remain there as long as she pleased; that on her return, after the death of her husband, she permitted her to live alone; that she allowed her in all respects to act and deal as a free person; that she frequently declared that Louisa and her child were free, and declared her purpose to give her property, at her death, to George, or to Louisa and George, then the jury are authorized to find that the plaintiff is a free person."

This instruction maintains the doctrine that a deed of manumission may be, and ought to be, presumed by the jury, when the testimony adduced establishes a sufficient ground for such a presumption. The theory of the defence is, that the petitioner can only establish her freedom by the actual production of a last will, or deed, proved or acknowledged, as provided by statute.

We are of opinion that the theory of the court is the correct one. The case of Burke v. Negro Joe, reported in 6 Gill & John., is directly in point. The grandmother and mother of Joe were the slaves of one William Mackubin, who, in his lifetime, permitted them to go at large as free persons, to contract debts, rent farms, and support themselves and children. Mackubin died in 1805, and by last will bequeathed his property to his wife for life, remainder to his children. The widow administered upon the estate, and died in 1824, when her children took possession of the property. They all knew that the grandmother and mother of Joe were slaves of William Macubin, yet they set up no claim to them, but permitted them to enjoy unmolested their freedom.

Upon these facts as stated in the opinion, the Supreme Court of Maryland held that a deed of manumission might be presumed; and it is proper here to remark that the statute of Maryland in relation to the emancipation of slaves does not very materially differ from our own. The same doctrine is

35—VOL. XXXIII.

maintained in 9 Gill, 484, and 7 B. Mon. 478; and was approved by this court in Durham v. Durham, 26 Mo. 507. If the question was a new one, we should certainly favor this view of it, for we think no good reason can be given why the general doctrine of presumption, as applied to deeds, patents, &c., should not be extended to deeds of manumission.

The judgment in this case is for the right party; violates, as we think, no rule of law, and is commended by justice and humanity. Let it be affirmed, the other judges concurring.